UNITED STATES of America, Plaintiff,

v.

Allen M. DORFMAN, Roy L. Williams, Joseph Lombardo, Thomas F. O'Malley, and Andrew G. Massa, also known as Amos Massa, Defendants.

No. 81 CR 269.

United States District Court, N. D. Illinois, E. D.

June 23, 1982.

---

Douglas P. Roller, Gary S. Shapiro, Mark J. Vogel, Sp. Attys., Chicago Strike Force, Dan K. Webb, U. S. Atty., Chicago, Ill., for plaintiff.

Albert E. Jenner, Jr., Jenner & Block, Chicago, Ill., Thomas A. Wadden, Wadden, Scherr, Krebs & Gitner, Washington, D. C., George J. Cotsirilos, Cotsirilos & Crowley, Ltd., Harry J. Busch, Chicago, Ill., William Hundley, Hundley & Cacheris, Washington, D. C., Sherman C. Magidson, Chicago, Ill., for defendants.

## MEMORANDUM OPINION

MARSHALL, District Judge.

Defendant Allen M. Dorfman has moved that Thomas P. Sullivan, Esq. be permitted to appear as additional counsel for Dorfman in the defense of this criminal case. Mr. Sullivan was the United States Attorney for this district from July 19, 1977 through April 30, 1981. The investigation which culminated in the indictment returned against Dorfman and others began on or before January 29, 1979 and continued through the return of the indictment on May 22, 1981, just 22 days following Mr. Sullivan's departure from office. The government resists Dorfman's motion upon the grounds that Mr. Sullivan's appearance in this action will violate 18 U.S.C. § 207(b) (Supp. II 1978) and Canon 9 of the American Bar Association's Code of Professional Responsibility which is applicable to the Bar of this court. In our judgment, Canon 1 of the Code and the ethical considerations and disciplinary rules under Canons 1 and 9 are also implicated. This appears to be a matter of first impression and it is one of considerable significance to the profession. To our knowledge, no other former United States Attorney has sought to appear in behalf of a defendant in a matter which was under investigation in the district during the United States' Attorney's term of office. For the reasons hereinafter stated, defendant Dorfman's motion is denied.

The facts relevant to this decision come from the records and files of this court, a stipulation entered into between present counsel for defendant Dorfman and the special attorneys of the United States Department of Justice who represent the government in this prosecution, the uncontroverted affidavit of Douglas P. Roller, Esq. of the Department of Justice and certain uncontroverted exhibits submitted by Dorfman in support of his brief and argument.

Mr. Sullivan was sworn in as United States Attorney for this district on July 19, 1977 and held office through April 30, 1981. Stip. 1 Before taking office he was a partner in the Chicago law firm of Jenner & Block. On March 10, 1977, while under consideration for the office, Mr. Sullivan publicly stated,

I have been asked what I would do as United States Attorney in cases involving persons or firms who were clients of mine or of other lawyers in Jenner & Block while I was in the private practice. In such cases I intend to recuse myself and have no involvement whatsoever. I have been advised by the Department of Justice that this is not an uncommon situation, especially when an active private practitioner becomes United States Attorney. It is customary in such instances for the United States Attorney to deputize one of his assistants as Acting United States Attorney for purposes of that matter, or to have the matter assigned to the appropriate Assistant Attorney General of the Department of Justice in Washington, D. C., or an attorney designated by him, or to the United States Attorney from another district ... I intend to avoid contact with cases in which there is any question about the propriety of my involvement, to the end that the highest standards of the office and of the legal profession are scrupulously followed.

Dorfman Memorandum, Ex. C.

From the outset of his service, Mr. Sullivan advised his first assistants, Charles P. Kocoras, now a judge of this court, and

Gregory C. Jones, and the attorneys in charge of the Chicago Strike Force, first Peter Vaira, and then Douglas P. Roller, who represents the government in this action, that Sullivan would not act as United States Attorney in any matter involving the Trustees of the Central States, Southeast and Southwest Areas Pension Fund (the Fund) or Allen M. Dorfman and that he intended to disqualify himself from any matter involving those persons and appoint his first assistant as Acting United States Attorney with respect to those matters. Stip. 3.[1] Consistent with this stated intent, Mr. Sullivan executed written recusals and appointments of his first assistant in all cases involving the trustees of the Fund or Allen M. Dorfman as soon as he learned of the existence of matters in the United States Attorney's office involving those persons. Stip. 4. The materials submitted on the motion include written recusals in eight separate matters which meet that description. *Id.* (a)–(h).

On January 29, 1979, an application was made by the government to Chief Judge James B. Parsons of this court for authorization to conduct electronic surveillance of Allen M. Dorfman and others over certain telephone lines pursuant to Title III of the Omnibus Crime Control Act of 1968, 18 U.S.C. §§ 2510–20 (1976 & Supp. II 1978). Applications for authority to extend that surveillance and to enlarge it to include the placement of hidden microphones in Dorfman's office to intercept "live" conversations were presented to Chief Judge Parsons on a monthly basis through January, 1980. The fruits of this extensive surveillance are the underpinnings of the instant indictment. All of the surveillance applications were presented to Chief Judge Parsons over Mr. Sullivan's name as the United States Attorney for this district. However, the parties have stipulated that he was not advised nor did he know of the existence of any of the applications until shortly before March 17, 1980 when he signed a statement

addressed to First Assistant United States Attorney Gregory Jones and Messrs. Roller and Fleishman of the Strike Force, which reads:

"I hereby recuse myself in the following matters:

Allen M. Dorfman, No. 80–265
Allen M. Dorfman
Joseph Lombardo, No. 80–328
Allen Dorfman
Joseph Lombardo
Roy Williams, No. 80–329

I designate Gregory C. Jones to take charge of these matters in my stead with full authority with respect to these matters." Stip. Ex. 5.

In March, 1980, a special grand jury for this district was convened. On March 13, 1980, four days prior to the above quoted recusal, the grand jury investigation and proceedings which culminated in the instant indictment began. Mr. Sullivan did not appear before the grand jury. However, virtually all of the transcripts of proceedings before the grand jury bear his name as United States Attorney.

The government and Dorfman have stipulated that, at no time during his service as United States Attorney, was Mr. Sullivan consulted about any phase of this case nor was he provided with any documents or other information about the case or the grand jury and surveillance proceedings which preceded the indictment, nor did he perform any services in the case nor did he make any inquiries of the attorneys representing the United States in this matter nor they of him. The First Assistant United States Attorney was at all relevant times treated as the Acting United States Attorney with respect to the case. Stip. 6. The parties have also stipulated that Mr. Sullivan's name was "inadvertently" placed on the documents relating to the electronic surveillance applications and the transcripts of proceedings before the grand jury, without his knowledge. Stip. 7.

1. The stipulation does not state the reasons underlying Mr. Sullivan's intended recusal. We infer from the totality of the record that Mr. Sullivan had represented Dorfman and the Fund in private practice. See ABA Model Code of Professional Responsibility Canon 4 (1981) (and ethical considerations, disciplinary rules and notes thereto.)

Prior to the effective date of his resignation as United States Attorney, Mr. Sullivan and Rodney D. Joslin, Esq. of the firm of Jenner & Block, corresponded separately with Mr. William P. Tyson, Acting Director of the Executive Office for United States Attorneys in the Department of Justice. Mr. Joslin advised Mr. Tyson that upon his resignation as United States Attorney, Mr. Sullivan would resume his partnership in Jenner & Block. He transmitted to Mr. Tyson a list of 59 cases and matters currently being handled by Jenner & Block with the Department of Justice. Included in that material was a sheet bearing defendant Dorfman's name and describing the then on-going grand jury investigation in Chicago. It noted Mr. Sullivan's recusal from that investigation on "3–17–80." [2] Mr. Joslin stated, "We understand that Mr. Sullivan is disqualified from all of the matters and cases listed in the attached list." He then went on to describe the methods which would be taken to assure that Mr. Sullivan did not participate in any way in the firm's current representation of the clients identified in the materials which were transmitted. Letter of Albert E. Jenner, Jr. Esq., Ex. B and C (May 10, 1982).

Mr. Sullivan referred to Mr. Joslin's letter and then stated that he had reviewed with Joslin the list of clients currently represented by Jenner & Block in matters and cases with the Department of Justice. He identified six matters in which he recalled having some participation as United States Attorney. The instant case was not among them. He went on to say, "With respect to the other cases which were in the office of the United States Attorney during my tenure, I was either unaware of the existence of the cases or of Jenner & Block's involvement therein or both." *Id.* Ex. A.

On May 19, 1981, Mr. Sullivan wrote a letter to Ms. Janis A. Sposato of the Office of Legal Counsel of the Department of Justice, in which he transmitted copies of the letters which he and Mr. Joslin had written

to Mr. Tyson on April 21. At this time he stated, "It is my understanding that for one year I am prohibited from having any direct contact with the Department of Justice in any matter; that for two years I am disqualified from handling matters which were within my official responsibility during my last year as United States Attorney; and that I am prohibited absolutely from acting as agent or attorney in any matter in which I participated personally while United States Attorney." He then made reference to a number of matters pending outside the Northern District of Illinois as to which he had no participation or responsibility while he was the United States Attorney. He expressed his understanding that he could share in the fees from these matters and consult with other members of the firm regarding them provided he had no direct contact with the Department of Justice. Mr. Sullivan then wrote, "As to the matters which Jenner & Block is involved with the Department of Justice in the Northern District of Illinois, there are six cases (listed in my letter to Bill Tyson of April 21, 1981) in which I did have some personal participation. We have requested a confirmation from the Department of Justice that other members of the firm may continue to work on those matters provided that the firm follows the procedures listed in Mr. Joslin's letter of April 21, 1981. As to other matters in the Northern District of Illinois as to which I had no personal participation or substantial responsibility while United States Attorney, it is my understanding that I may share in the fees from these matters, and that I may consult with other members of the firm regarding these matters provided that I have no direct contact with the Department of Justice." Stip. Ex. 9.

On June 9, 1981, Laurence S. McWhorter, Acting Deputy Director of the Executive Office for United States Attorneys responded to Mr. Sullivan's May 19 letter that, "In our view, the understandings expressed in your letter of May 19, 1981, are correct."

---

**2.** Two other grand jury investigations were noted in Newark and Washington, D. C., with recusal dates of 6–5–80 and 11–24–80. Because these investigations have not been urged by any part as relevant to the pending motion we regard them as irrelevant.

Stip. Ex. 11. Mr. McWhorter then went on to discuss the scope of the Department of Justice as far as Mr. Sullivan was concerned, i.e., that it included all United States Attorney's offices (*but see Sullivan v. Devine*, No. 81 C 3810 (N.D.Ill. Jan. 7, 1982), *vacated as moot*, —— U.S. ——, 102 S.Ct. 2263, 73 L.Ed.2d 1280 (1982)). He then observed that the "substantial responsibility" test of ABA Model Code of Professional Responsibility DR 9–101(B) (1981) did not necessarily activate *id.* DR 5–105(D)'s extension of disqualification to other members of a firm. Finally he stated that the prohibitions against Mr. Sullivan's personal contacts with the Department of Justice for a period of one year contained in 18 U.S.C. § 207(c) which Mr. Sullivan had acknowledged in his letter of May 19 did not apply to other partners in Jenner & Block nor did it prohibit Mr. Sullivan from sharing in fees generated by such partner engagements so long as Sullivan had, in respect to such matters, "no other disqualification." *Id.*

On July 7, 1981, Mr. Sullivan addressed a memorandum to Messrs. Joslin, McWhorter, and Gregory C. Jones, then the Acting United States Attorney for this district, in which Mr. Sullivan asserted that he and Mr. McWhorter had "agreed that for the first year after I left office (subject to the prohibition against personal appearances, 18 U.S.C. § 207(c)), I may consult with other members of the firm, clients, witnesses and co-counsel, and share in fees, as to all matters outside the Northern District of Illinois, and as to those matters within the Northern District of Illinois as to which I did not have substantial responsibility while United States Attorney." The memorandum proceeded to refer to the 59 matters and cases in Mr. Joslin's letter of April 21, identified two more matters and then listed eight matters then being handled by Jenner & Block, "as to which [Sullivan] had substantial responsibility while [he] was United States Attorney." Mr. Sullivan went on to state, "As to the balance of the cases—as to which I did not have substantial responsibility while United States Attorney—I may consult with other members of Jenner & Block about those matters, and share in

fees." In respect to the instant matter, Mr. Sullivan said in a footnote to the list of 59:

> As to Allen M. Dorfman, who is one of the 59 listed matters (and who is now a client of Jenner & Block in an indicted case, 81 CR 269, and other matters) I have been advised that my name appears on some of the pre-indictment papers involving court ordered electronic eavesdropping. This was an inadvertent oversight by government counsel, because I had recused myself from the very outset from all matters involving Mr. Dorfman, the Central States, Southeast and Southwest Areas Health, Welfare and Pension Funds, and related cases. I am proceeding upon the assumption that this error, of which I was not aware at the time, does not operate to disqualify me now from consulting about or sharing in fees from these clients.

Stip. Ex. 11.

The instant indictment was returned May 22, 1981. Mr. Roller in his affidavit asserts that during the course of the grand jury investigation, a number of prosecutive memoranda and draft indictments were prepared under his supervision and were submitted for review and approval by the United States Attorney's office in this district as required by Department of Justice guidelines. During the period August, 1980 through May, 1981, Mr. Roller and other members of his staff had a series of extensive discussions with Acting United States Attorney Gregory C. Jones and various of the section chiefs of the United States Attorney's office regarding prosecutive opinions and theories in the investigation which culminated in the instant indictment.

Immediately following the return of the indictment, the defendants, including Dorfman, launched a concerted and multi-faceted attack against the electronic surveillance and grand jury investigation which preceded the return of the indictment. Motions to suppress were presented attacking the constitutional and statutory sufficiency of the electronic surveillance applications presented to Chief Judge Parsons, the truthfulness of those applications and the conduct of

government agents in executing the orders authorizing the surveillance. All of the defendants, including Dorfman, sought discovery of grand jury testimony upon the ground of misconduct by government attorneys before the grand jury.

Near the conclusion of the hearings on the motion to suppress the fruits of the electronic surveillance, the question of Mr. Sullivan's appearance in this case first arose. We were advised that Mr. Sullivan intended to appear in behalf of defendant Dorfman on or after May 1, 1982, *i.e.*, one year after his departure from office. *See* 18 U.S.C. § 207(c). We requested counsel for Dorfman, all of whom are partners in or associates of Jenner & Block, to present Mr. Dorfman's motion for permission for Mr. Sullivan to appear as additional defense counsel at the earliest opportunity.

The extensive correspondence among Messrs. Joslin, Sullivan, Tyson, McWhorter, Jones and Ms. Sposato does not resolve the issue before us. At no point was Mr. Sullivan's contemplated appearance in this action discussed, intimated or alluded to. Arguably Mr. Joslin's April 21, 1981 observation that "Mr. Sullivan is disqualified from all of the matters and cases listed in the attached list" and Mr. Sullivan's own July 7, 1981 limitation of his activities in this case to "consulting about or sharing in fees" could be regarded as preclusive. But the government does not urge that position and we choose not to adopt it on our own motion.

What the government does urge is that Mr. Sullivan's public appearance in this case in behalf of defendant Dorfman will contribute markedly to the public's impression that public service is but a vehicle to enhance private gain and that a "revolving door" exists between the private bar and government service through which the private practitioner enters upon government service only to emerge a short time later to represent those whom he or she regulated, investigated or prosecuted during their term of public office. It is this public impression and its consequent erosion of public confidence in government which, the

government urges, motivated the Congress to pass and the President to approve, the Ethics in Government Act of 1978. It is the Act, in 18 U.S.C. § 207(b), and Canon 9 of the Code of Professional Responsibility which the government asserts precludes Mr. Sullivan's appearance in this action.

Section 207 contains a three tiered restriction on post government service activity. Section 207(c) is the simplest and most direct—it prohibits a former government officer or employee, including of course, a former United States Attorney, from having any direct contact with the agency by which the person was employed for one year after termination of service. All agree that Mr. Sullivan was bound by this prohibition and that he honored it.

18 U.S.C. § 207(a) is also straight forward. It permanently prohibits a former government officer or employee from knowingly acting as attorney for any person, other than the United States, in any matter in which the officer "participated personally and substantially" while holding office. Mr. Sullivan's appearance here would not fall within the proscriptions of § 207(a), for it is agreed that he did not participate personally or substantially in any way in any of the activities of his office which led up to the instant indictment.

It is § 207(b) of Title 18 which the government asserts precludes Mr. Sullivan's participation in this matter. That section prohibits a former officer or employee of the government, for a period of two years after his employment has ceased, from knowingly acting as an attorney for any person, other than the United States, in any matter "which was actually pending under his official responsibility as an officer . . . within a period of one year prior to the termination of such responsibility . . ."

Section 202(b) of Title 18 defines the term "official responsibility" as meaning "the direct administrative or operating authority, whether intermediate or final, and either exercisable alone or with others, and either personally or through subordinates, to approve, disapprove, or otherwise direct government action."

But for Mr. Sullivan's recusal from all matters involving defendant Dorfman and the Fund, and his particular recusal in this matter on March 17, 1980, it is clear that § 207(b) would prohibit his participation in this matter. Obviously the investigation leading to the instant indictment was "actually pending under his official responsibility" within the year prior to his resignation from the office of United States Attorney. And, this is so even though the prosecution was being conducted by the Strike Force of the Department of Justice rather than the office of the United States Attorney for this District. In the first place, as United States Attorney Mr. Sullivan had the legal responsibility for the prosecution of all federal offenses within the Northern District of Illinois. 28 U.S.C. § 547(a) (1976). While investigation of organized crime matters falls within the primary responsibility of the Organized Crime and Racketeering Section of the Department of Justice, once a decision to prosecute is tentatively reached, the United States Attorney becomes the responsible official. As chief prosecuting official of the United States in each judicial district, he has full authority over the judicial phases of all cases, unless specifically overruled or removed by an Assistant Attorney General. The United States Attorneys' Manual requires United States Attorneys to be "kept fully advised of organized crime developments within their districts. When a specific investigation has progressed to the point where there is to be a presentation for an indictment or any court proceeding, the Chief of the Strike Force shall then for this purpose operate under the direction of the United States Attorney who shall oversee the judicial phase of the development of the case. The matter shall be handled by an attorney or attorneys designated by the United States Attorney, at least one of whom shall be a Strike Force Attorney." United States Department of Justice, United States Attorneys' Manual, tit. 9, § 9–1.174 (1981).

Accordingly, in the language of § 202(b), the proceedings underlying the instant prosecution fell under Mr. Sullivan's "direct administrative or operating authority, wheth-er intermediate or final, and either exercisable alone or with others," from its inception prior to January, 1979, through his resignation on April 30, 1981.

But defendant Dorfman argues that Mr. Sullivan's recusal from all Dorfman and Fund matters and his particular recusal on March 17, 1980 from the instant matter removed this case from the scope of Mr. Sullivan's official responsibility no later than March 17, 1980, which was more than one year prior to his resignation from office. This, coupled with the fact that he concededly did not participate "personally and substantially" in the matter exempts him, argues Dorfman, from the strictures of § 207(b).

The government responds that Mr. Sullivan's recusal does not relieve him of the prohibitions of § 207(b) relying upon certain regulations promulgated by the Director of the Office of Government Ethics with the approval of the Attorney General which undertake to define the scope of § 207(b).

5 C.F.R. § 737.7 (1982) (effective April 3, 1979, 44 Fed.Reg. 19,974 (1979)) is concerned with the two year restriction on former government officers acting as an attorney in a particular matter for which the officer had official responsibility during his or her term in office. Subsection (b)(5) of the regulations provides:

A former [officer] cannot avoid the restrictions of this section ... by self-disqualification with respect to a matter for which he or she otherwise had official responsibility. However, self-disqualification is effective to eliminate the restriction of § 207(a) [i.e. the absolute prohibition against participation in any matter in respect to which the officer "participated personally and substantially"].

The government urges that while subsection (b)(5) permits recusal from personal or substantial participation in a particular matter, thus freeing the former United States Attorney from the lifetime post-government representation prohibition of 18 U.S.C. § 207(a), the regulation makes

clear that recusal does not permit avoidance of the two year prohibition of § 207(b) in respect to those matters which were actually pending under the official responsibility of the particular officer during his or her last year in office. Therefore, despite his recusal, this matter was actually pending under Mr. Sullivan's official responsibility during the year preceding his resignation from office.

For his part, defendant Dorfman relies upon a regulation of the Department of Justice found in 28 C.F.R. § 0.131 (1981) (effective July 25, 1979, 44 Fed.Reg. 43,468 (1979)) which provides:

> Each U. S. Attorney is authorized to designate any Assistant U. S. Attorney in his office to perform the functions and duties of the U. S. Attorney during his absence from office, or with respect to any matter from which he has recused himself, and to sign all necessary documents and papers, including indictments, as Acting U. S. Attorney while performing such functions and duties.

Dorfman urges that this authorization to United States Attorneys to recuse themselves from pending matters should take precedence over the general language of 5 C.F.R. § 737.7(b)(5).

The two regulations are not in conflict. The Justice Department regulation upon which Dorfman relies merely recognizes the procedure a United States Attorney should follow either during his absence from office or with respect to a matter from which he should recuse himself. It does not speak to the consequences of the recusal. As Mr. Sullivan observed before taking office, when a lawyer enters government service from private practice it is reasonable to assume that matters will arise in the public office involving former clients from which the public lawyer should recuse him or herself. 28 C.F.R. § 0.131 (1981) recognizes this reality and establishes the procedure by which it can be served.

On the other hand, the regulation promulgated by the Director of the Office of Government Ethics upon which the Government relies, which was approved by the Attorney General, deals with the consequence of recusal in light of the proscriptions contained in 18 U.S.C. § 207(b). The Ethics in Government Act of 1978 makes no mention of recusal. However, the dichotomy between personal and substantial participation (§ 207(a)) and official responsibility (§ 207(c)) implicitly recognizes degrees of involvement during government service. 5 C.F.R. § 737.7(b)(5) accommodates the dichotomy.

But Dorfman urges that if this be so, 5 C.F.R. § 737.7(b)(5) is inconsistent with the § 202(b) definition of "official responsibility". In essence he argues that when Mr. Sullivan recused himself from this matter no later than March 17, 1980, he divested himself of "the administrative or operating authority, . . . either exercisable alone or with others, and either personally or through subordinates, to approve, disapprove, or otherwise direct government action" with respect to this matter.

Recusal by an office holder from a matter does not remove the matter from the scope of the authority of the office. Recusal prevents the personal judgment of the office holder from being brought to bear on the matter. It recognizes that try as we may, as humans we cannot be certain that we have excluded personal considerations from our official action unless we refrain from participating in the official action. But the matter and the action it demands remains pending before the office and subject to its official responsibility. Indeed, the act of recusal recognizes that continuing responsibility.

In light of Mr. Sullivan's announced position prior to taking the office and his consistent recusal from matters involving Allen M. Dorfman and the Fund, we do not perceive any manipulation on his part in this matter. But, were we to accept defendant Dorfman's position, government officers, including United States Attorneys and their assistants, during the last year of their term of office, could selectively recuse themselves from particular matters actually pending under their official responsibility enabling them to participate directly in

those matters a year hence. That was not the intent of the Congress when it adopted § 207(b) as a part of the Ethics in Government Act of 1978.

> 18 U.S.C. § 207, like other conflict of interest statutes, seeks to avoid even the appearance of a public office being used for personal or private gain. In striving for public confidence in the integrity of government, it is imperative to remember that what appears to be true is often as important as what is true. Thus government in its dealings must make every reasonable effort to avoid even the appearance of conflict of interest . . . .

Sen.Rep.No.170, 95th Cong., 2d sess. 32 (1977), *reprinted in* 1978 U.S.Code Cong. & Ad.News, 4216 at 4248.

18 U.S.C. § 207(b), is a criminal statute. Mr. Sullivan has committed no act which would violate the statute and we cannot render an advisory opinion as to whether his representation of defendant Dorfman in this action would constitute a violation of the Act. We can, however, prohibit his appearance in the action if it would violate the Code of Professional Responsibility. Canon 1 of the Code provides "A lawyer should assist in maintaining the integrity and competence of the legal profession." Disciplinary Rule 1–102(A)(3) and (5) provides, "a lawyer shall not: . . . (3) engage in illegal conduct involving moral turpitude, . . . (5) engage in conduct that is prejudicial to the administration of justice." This disciplinary rule encompasses § 207(b), because the statute defines conduct which is illegal and prejudicial to the administration of justice. Therefore, violations of § 207(b) are prohibited by the disciplinary rule and we must construe the statute in order to determine whether Mr. Sullivan's appearance would be in violation of the rule. We have concluded that it would be.

Canon 9 of the Code of Professional Responsibility provides, "A lawyer should avoid even the appearance of professional impropriety." Mr. Sullivan's appearance in behalf of defendant Dorfman in this case would violate this canon.

The public records and files of this court now disclose that the preindictment investigation in this case commenced no later than January, 1979, in the middle of Mr. Sullivan's second year in office, and continued through the balance of his term in office. Proceedings actually brought in this court were presented in his name, albeit inadvertently. The defendants, including Dorfman, have launched an all-out attack upon the sufficiency of the applications presented to Chief Judge Parsons in Mr. Sullivan's name and during his term of office and the honesty of agents of the Federal Bureau of Investigation and Strike Force Attorneys in the representations which they made to Chief Judge Parsons. While those attacks have been rejected, they have not been withdrawn and will remain a part of this action until its conclusion. Thus, if Mr. Sullivan appears in this case on behalf of Dorfman, he must adopt the position of his partners and co-counsel that significant misconduct was engaged in by his colleagues during his term in office as United States Attorney.

When the Code of Professional Responsibility speaks of the "appearance of professional impropriety," it speaks of the public's impression of the profession and the conduct of its members. This is evident from the language of the ethical considerations which accompany Canon 9 which speak of the promotion of "public confidence in our system and in the legal profession." They recognize that "public confidence in law and lawyers may be eroded by irresponsible or improper conduct of a lawyer." While we do not profess the ability to divine the public's reaction to Mr. Sullivan now appearing in behalf of a person who has been accused of a crime as a result of an investigation which was actually pending under his official responsibility while he was in office, we are confident that such a turn of events would not promote public confidence in the law and lawyers and would, in all likelihood, erode that confidence.

Defendant Dorfman urges that the refusal to permit Mr. Sullivan's appearance in this case should not be based upon Canon 9 alone. As we have observed in another

setting, disqualification of a lawyer for the appearance of impropriety is normally coupled with evidence of the likelihood of actual wrongdoing under one of the disciplinary rules. *Westinghouse Electric Corp. v. Rio Algom Ltd., et al,* 448 F.Supp. 1284, 1304 (N.D.Ill.1978) *rev'd on other grounds,* 588 F.2d 221 (7th Cir. 1979). But, our earlier conclusions regarding § 207(b) and Disciplinary Rule 1–102, meet that test. Thus we conclude that here "there is a reasonable possibility of improper professional conduct" and "the likelihood of public suspicion or obloquy [which] outweighs the social interests which will be served" by Mr. Sullivan's appearance in this case. *Woods v. Covington County Bank,* 537 F.2d 804, 813 n.12 (5th Cir. 1976).

Nor are we insensitive to defendant Dorfman's sixth amendment right to the effective assistance of counsel and its counsel of choice elements. *See United States v. Seale,* 461 F.2d 345, 358–61 (7th Cir. 1972); *see also, Slappy v. Morris,* 649 F.2d 718, 720–21 (9th Cir. 1981), *cert. granted,* —— U.S. ——, 102 S.Ct. 1748, 72 L.Ed.2d 160 (1982). The record discloses, however, that to date Mr. Dorfman has been ably represented by Albert E. Jenner, Jr., Esq., John C. Tucker, Esq. and Michael J. Rovell, Esq., all partners in Jenner & Block, plus three or four associates of that firm. That representation has been of the highest caliber. We are confident that our ruling today does not deprive the defendant Dorfman of the effective assistance of counsel and that the public interest in preserving the integrity and the appearance of propriety in the trial bar of this court outweighs Mr. Dorfman's desires to have an additional lawyer represent him in this case.

The motion of defendant Allen M. Dorfman to permit Thomas P. Sullivan, Esq. to appear as additional counsel in this case is denied.