**UNITED STATES of America,
Plaintiff,**

v.

**Carl W. MARTIN, Defendant.**

**No. 2:98–CR–0296–B.**

United States District Court,
D. Utah,
Central Division.

March 23, 1999.

Scott Jay Thorley, Asst. U.S. Atty., District of Utah, Salt Lake City, UT, for plaintiff.

Paul T. Moxley, Gordon W. Campbell, Salt Lake City, UT, for defendant.

## ORDER

SAM, Chief Judge.

This matter is before the court on objection to the magistrate judge's order issued December 4, 1998. Applying 18 U.S.C. 207(a)(1) and 5 C.F.R. 2637.201(d) to the situation involving former AUSA Gordon Campbell's representation of defendant Carl W. Martin in the trial of the instant case, the magistrate found an impermissible conflict of interest which would prohibit Mr. Campbell from representing Mr. Martin in this case.

Under 18 U.S.C. § 207, a former government officer or employee is prohibited from acting as an attorney for any person in any matter in which the officer participated personally and substantially while in office. Determining what level of conduct amounts to "personal and substantial participation" is the task presented to the court. 5 C.F.R. 2637.201(d)is helpful in this regard and provides as follows:

(1) Basic requirements. The restrictions of section 207(a) apply only to those matters in which a former Government employee had "personal and substantial participation," exercised "through decision, approval, disapproval, recommendation, the rendering of advice, investigation or otherwise." To participate "personally" means directly, and includes the participation of a subordinate when actually directed by the former Government employee in the matter. "Substantially," means that the employee's involvement must be of significance to the matter, or form a basis for a reasonable appearance of such significance. It requires more than official responsibility, knowledge, perfunctory involvement, or involvement on an administrative or peripheral issue. A finding of substantiality should be based not only on the effort devoted to a matter, but on the importance of the effort. While a series of peripheral involvements may be insubstantial, the single act of approving or participation in a critical step may be substantial. It is essential that the participation be related to a "particular matter involving a specific party." [Parenthetical reference omitted.]

*Id.*

There seems to be little dispute that Mr. Campbell's participation was "personal." He has admitted to having supervisory responsibility over the case, personally meeting with FBI agents to discuss the matter and reviewing and approving investigative decisions as the case proceeded. In the court's view this conduct amounts to "personal" participation. The court will therefore proceed to determine whether Mr. Campbell's personal participation was "substantial" enough to require his dis-

qualification from representation of Mr. Martin.

All parties accept Exhibit B to Defendant Martin's Objection to Order, which was also submitted by the government as Exhibit 1, as being an accurate reflection of Mr. Campbell's participation in the matter while an AUSA. The court notes, however, the government's statement that typically there are numerous additional telephone calls and in-person contacts which are not necessarily memorialized. The court concurs that additional contacts would likely have occurred. Therefore, as stated by the government in its Supplemental Memorandum:

> The facts before this court are that AUSA Campbell authorized investigative activities by the FBI, and he authorized the use of a polygraph on the target of the investigation, that AUSA Campbell was in a possession [sic] to render prosecutive opinions in the matter, that AUSA Campbell required interviews of the target of the investigation and further requested investigation into bankruptcy fraud aspects of the case. AUSA Campbell issued at least one grand jury subpoena for records which he deemed critical to prosecution of the case, and received those records pursuant to that grand jury subpoena. AUSA Campbell further participated in strategy meetings concerning the timing of the bringing of the instant case in relationship to other matters involving Mr. Martin.

Government's Supplemental Memorandum Regarding Potential Conflict of Interest at 3–4. Counsel for defendant Martin has only taken issue with interpretation of these actions—they argue that while it is true Mr. Campbell was in a position to make prosecutive decisions in connection with the subpoenaed documents, the facts are that he made no such decisions and didn't even review the documents. Objection to Order at 4 [although pages of the Objection are unnumbered this reference is obtained from the fourth page from the beginning]. Furthermore, at most, Mr. Campbell "agreed" with the investigating agents that subpoena's should issue. *Id.* This merely confirms his "supervisory" v. "substantial" role in the eyes of defendant Martin.

Nevertheless, the court is persuaded that Mr. Campbell's participation in this matter while an AUSA was personal and substantial, within the context of § 207(a). The court's interpretation is confirmed by Example 2, under 5 C.F.R. § 2637.201(d) which provides:

> A Government lawyer is not in charge of, nor has official responsibility for a particular case, but is frequently consulted as to filings, discovery, and strategy. Such an individual has personally and substantially participated in the matter.

Therefore, the court finds there is a conflict of interest which prohibits Mr. Campbell from representing the defendant after terminating his government employment.

Unlike the magistrate, however, the court is not drawn to this conclusion by the sole act of Mr. Campbell having either "approved" or "decided" to issue Grand Jury subpoena's for the checks at issue. Rather, the court finds Mr. Campbell's involvement in a supervisory capacity, taken as a whole, creates the "reasonable appearance" of significance, especially when viewed in combination with the "single act of approving or participation in" the "critical step" of issuing the subpoena's for the checks.

The court's view is supported by *United States v. Dorfman*, 542 F.Supp. 402 (N.D.Ill.1982), as cited by the government. As in *Dorfman*, Mr. Campbell's appearance on behalf of defendant Martin would be at direct odds with one of the main purposes behind Congress' enactment of the Ethics in Government Act of 1978,— that being to eliminate the perception "that a 'revolving door' exists between the private bar and government service...." *Id.* at 407. Furthermore, the government has a serious interest in prohibiting con-

duct which could interfere with the prosecutorial discretion and prosecutive decisions necessary to the effective operation of the United States Department of Justice.

Finally, the court finds its decision does not undermine or impermissibly infringe defendant Martin's sixth amendment right to counsel of his choice. As stated previously by many courts, that right is not without limitation, particularly when counsel of choice has a "previous or ongoing relationship with an opposing party, even when the opposing party is the Government." *Wheat v. United States,* 486 U.S. 153, 159, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988). Balancing the interests of the defendant in this regard (especially considering that Mr. Campbell's firm can continue to ably represent Mr. Martin) with the proscription of Section 207(a) and the government's interest in preservation of the integrity of its system, the court cannot find that Mr. Campbell's representation of defendant Martin is appropriate or permissible.

Accordingly, the court finds a conflict of interest exists and that 18 U.S.C. § 207(a) prohibits Mr. Campbell's representation of defendant Martin in the instant criminal case.

So Ordered.